A09A0487. IN THE INTEREST OF Z. D. et al., children.
(674 SE2d 630)

ELLINGTON, Judge.

The father of Z. D. and J. D. challenges the sufficiency of the evidence supporting an order of the DeKalb County Juvenile Court finding his children deprived, as defined in OCGA § 15-11-2 (8). Because the juvenile court's ruling was supported by clear and convincing evidence of deprivation, we affirm.

> We review a trial court's finding of deprivation in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived.

---

> This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Citation and punctuation omitted.) *In the Interest of B. M. B.*, 241 Ga. App. 609 (527 SE2d 250) (1999). So viewed, the record reveals the following evidence.

On December 5, 2007, the DeKalb County Department of Family and Children Services ("the Department") filed in the juvenile court a complaint seeking protective care, alleging that six-year-old J. D. and seven-year-old Z. D. were deprived.[1] The complaint alleged that J. D. had received a "black eye" from her father, that her father had prevented her from attending school, and that the father denied the Department's caseworker access to the home or children to investigate the allegations. On December 6, 2007, the court ordered the children placed in protective custody.

On December 21, 2007, the Department filed a deprivation petition alleging deprivation as defined in OCGA § 15-11-2 (8). The Department alleged that J. D.'s father had given her a black eye, kept her out of school, and had thwarted a caseworker's efforts to investigate. It also alleged that the father had been directed pursuant to a "Brief Intervention for Families" recommendation to seek medical attention for Z. D., who exhibited extreme hunger at school. The petition alleged that both children were forbidden from eating school cafeteria food and were punished if they disobeyed. On January 3, 2008, the Department prepared a reunification case plan for the father which required him to complete a psychological assessment, maintain stable housing and income, to demonstrate that he was providing adequate meals for the children, and to use nonharmful methods of discipline. While in protective custody, Z. D. and J. D. were evaluated by a physician, who found no evidence of malnutrition. The physician recommended further testing for parasites and brain abnormalities given that both children had a history of "hyperphagia [excessive hunger] of unclear etiology."

On February 28 and 29, 2008, the juvenile court held an adjudicatory hearing on the deprivation petition. The father was present and represented by counsel. With respect to Z. D. the Department adduced evidence that the child had a history of unresolved bedwetting and urinating on herself and the floor. The child was punished for these incidents by either having to sit on the toilet for prolonged periods of time or being made to sit in cold bath

---

[1] The complaint also alleged that other children of the father and his live-in girlfriend were deprived. The status of those children is not at issue in this appeal.

water. The father explained that Z. D.'s wetting behavior was the result of her being too lazy to get up and go to the bathroom.

Z. D. also exhibited symptoms of extreme hunger while at school. On a regular basis, she would either take other students' lunches, beg from teachers, staff, and cafeteria workers, or eat food that had fallen on the floor. Z. D.'s grandmother testified that the child once ate an entire bag of frozen spaghetti. Although the father had been aware of Z. D.'s unusual eating behaviors since 2005, he did not seek medical or psychological treatment for the child. Instead, he forbade Z. D. to eat cafeteria food and punished her for defying him by whipping her with a belt, making her do "calisthenics," or making her hold heavy weights. A school counselor testified that she saw marks on Z. D.'s arm and face that concerned her enough to report them as potential abuse.

With respect to J. D., the Department adduced evidence that a caseworker saw marks and bruises on J. D.'s face, and that J. D. said her father had forbidden her to eat school food. J. D., when questioned by the caseworker about her father's disciplinary methods, shouted: "I don't want to talk about it." Also, a school counselor and the children's foster care supervisor both testified that the children were instructed by their father not to talk to school personnel. The foster care supervisor testified that the children were anxious and fearful during visitation with their father. Z. D. told the foster care supervisor that she did not want to return to her father's home; J. D. did not care "either way."

With respect to the father, the Department showed that he was very uncooperative. He would not agree to a home visit to determine if adequate food was available for the children. A caseworker went to the home with a police escort, but the father refused to allow a home inspection, contending the house was not his. The father also kept the children out of school after reports of suspected physical abuse, and even tried to withdraw them from school. The father contended he was in the process of moving, but did not keep the department informed of any address changes or show that he had stable housing. The father did not follow up on recommended medical treatment or counseling for the children, nor did he complete the Department's recommended safety plan by submitting to a psychological evaluation or demonstrating his ability to properly feed and discipline the children.

> OCGA § 15-11-2 (8) defines a deprived child as a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals. It is well established that clear and convincing

evidence is required to support a finding of deprivation. The definition of a deprived child, as contained in OCGA § 15-11-2 (8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child, and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue.

(Citations, punctuation and emphasis omitted.) *In the Interest of B. M. B.*, 241 Ga. App. at 610.

The evidence clearly establishes that Z. D. and J. D. are deprived. The Department showed that the children suffered serious behavioral problems that were not being addressed with needed medical and psychological treatment. Instead Z. D.'s bedwetting and both children's excessive hunger were being punished with methods the court found inappropriate or abusive. Moreover, the father was uncooperative with the Department and directed the children to be uncooperative as well. The juvenile court specifically found that the evidence supported a finding that the children had been physically abused and medically neglected. Because the trial court's findings were supported by clear and convincing evidence, we affirm the court's order.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 3, 2009.

*Jennifer O. Watts*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Miessha Thomas, Karimah Boston, Jerry W. Thacker*, for appellee.